OPINION OF THE COURT
Sara P. Schechter, J.
Respondent has moved this court for an order (a) dismissing the juvenile delinquency petition as defective pursuant to CPL 100.15 (subd 3), 170.30 (subd 1, par [a]) and 170.35 (subd 1, par [a]), as the material allegations of the supporting depositions are claimed to be hearsay and (b) suppressing the statements allegedly made by respondent which are contained in supporting depositions as violative of the “social-worker/client privilege” contained in CPLR 4508. The petition charges the 15-year-old respondent with acts, which if committed by an adult, would constitute the crime of arson. The alleged incident occurred at Euphrasian Residence.
The court finds the petition is not defective and denies the dismissal motion. The court does find, however, that two of the four supporting depositions contain inadmissible hearsay. Specifically, in the affidavits of Annie R. and Judith M., certified social workers (hereinafter CSW), the *661 affiants set forth statements made to them by one Aixia L., who is not the respondent in this proceeding. As these statements are inadmissible hearsay, these affidavits must be stricken from the record of this case. The remaining two affidavits, however, one by Sister Rose B., and the other by Diane T. (both of whom are CSW’s), each concern a conversation between the affiant and the respondent concerning the acts alleged. As such, the statements contained therein are admissions — not hearsay, and may be asserted in support of the petition.
The affidavits of Sister Rose B. and Diane T. are not violative of the social worker/client privilege established by CPLR 4508. Assuming, arguendo, that Sister B. and Diane T. stand in the relation to Koretta W. as social worker to client, nevertheless, it is incumbent upon this court to inquire further, as the statutory privilege afforded by CPLR 4508 is not absolute but must be balanced against competing interests once invoked. (Matter of Clear, 58 Misc 2d 699, revd on other grounds sub nom. Matter of Klug, 32 AD2d 915.) In the instant case, as further discussed below, the strong public interests in ascertaining the truth of the charges in the petition so that an appropriate disposition may be fashioned and in the proper functioning of the public child care system require that the privilege be overcome and the social workers be permitted to disclose these inculpating communications.
Courts confronted with the CPLR 4508 privilege have analyzed the nature of the relationship existing between the client and social worker, and in doing so, have utilized the four criteria set forth in Wigmore, Evidence (vol VIII [McNaughton rev ed], § 2285, p 527) to determine whether the privilege should prevent disclosure. Those criteria are:
(1) Communications must originate in the confidence that they will not be disclosed;
(2) the element of confidentiality must be essential to the maintenance of the relationship between the parties;
(3) the relation is one which in the opinion of the community ought to be fostered; and
(4) the injury that would inure to the relationship as a result of disclosure must be greater than the benefit gained in regard to the correct disposal of litigation.
*662 Matter of Clear (supra) is a case in which the court found that, in light of those four criteria, the privilege should be overcome. In that case, which was a proceeding brought by an authorized agency to terminate parental rights and commit custody of the child to the agency, the court held that the agency could disclose communications between the agency and the mother. The court found that none of the four criteria were truly applicable to the case before it, and, in reference to the fourth criteria, asserted that (supra, p 703): “[T]he disclosure of evidence relevant to a correct determination of whether the mother of an infant should be permanently deprived of its custody must be regarded as of far greater importance than any injury that might inure to the relationship between the social worker and the mother.” See, also, Perry v Fiumano (61 AD2d 512), a custody proceeding in which the court denied disclosure because that balance between the injury to the social worker/client relationship and the benefit gained for correct disposal of the litigation tipped in favor of the privilege, in light of the vagueness of the mother’s conclusory allegations of the need for disclosure of the relevant record and People v Lipsky (102 Misc 2d 19), in which disclosure of statements made by a defendant to a psychiatric social worker during a court-ordered evaluation was permitted because defendant was not the client of the social worker when making the statements.
In the pending case, as in Clear (58 Misc 2d 699, supra), and People v Lipsky (supra), the court questions whether Koretta W. had an expectation of confidentiality when she spoke with Sister Rose B. or Diane T. about the incident in question, and further questions whether confidentiality was essential to the relationship that did exist between these people. Most importantly, however, the overriding need for disclosure in this case is found by the court to be greater than the injury that will inure to the relationships between the affiants and Koretta W. as a result of this disclosure.
The first policy consideration which must be weighed in the balance is the importance which the court must give to determining the truth of the charges in the petition. Although it is well settled that juvenile delinquency prosecu *663 tions must proceed in accord with substantially the same constitutional limitations as adult prosecutions (Matter of Gault, 387 US 1; Matter of Winship, 397 US 358), the privilege sought to be invoked here is a relatively recent statutory creation without common-law foundation and is certainly not of constitutional dimension. In weighing the benefit of disclosure, therefore, the court must decide whether the child’s trust in any social worker could outweigh her need for treatment, if in fact she committed the arson with which she is charged. In one year the child will become part of the adult criminal court system if she has any further difficulties with the law. To shroud in secrecy what may well have been a cry for help now would be a cruel parody of justice.
Second, for the welfare of this respondent and others similarly situated, the court must also consider the impact of its decision on the working of the child care system. Euphrasian Residence is one of a group of authorized child care agencies which, under contract to the Department of Social Services and/or the Division for Youth, provide foster care in open settings for socially or emotionally troubled teenagers. Placement in a more secure facility can be made only after an adjudication of delinquency.
From the standard Department of Social Services child care agency contract for the current fiscal year, a public document, the court notes that agencies like Euphrasian retain the right, within certain limits, to accept or reject each child referred for service. The agencies must be willing to “take a chance” on certain troubled youngsters, therefore, in order to insure their placement in the least restrictive placement appropriate to their needs. If these agencies are effectively precluded from enlisting the court’s authority when serious problems do develop, they may well be less willing in the future to accept youngsters who are regarded as potential troublemakers, the very ones whose need for help is greatest.
It is unrealistic to force a residential child care agency to make an election between conducting its own investigation of an incident on its premises and calling in the police, the fire marshal, or other authorities whose assistance is warranted, with a view to possible court action. To thus under *664 mine the authority of the staff of the residence would create a chaotic and physically dangerous environment unfit for children. As the court could not condone the placement of children in such an atmosphere, it will not contribute to the creation of it.*
Respondent’s motion to suppress these statements is also denied. Use of this procedural technique for pretrial limitation on evidence to be presented at trial is restricted to those grounds set forth in CPL 710.20, which does not include assertion of statutory privileges.
Pursuant to CPL 710.20 (subd 3), a motion may be made to suppress evidence which “[c]onsists of a record or potential testimony reciting or describing a statement of such defendant involuntarily made, within the meaning of section 60.45”. As respondent does not claim that the relevant statements were involuntarily made, a motion to suppress is improper and must be denied.

 In light of its holding, the court need not discuss in depth the contention of the prosecutor in his memorandum of law, dated March 8,1983, at pages 2 through 3, that CPLR 4508 (subd 3), providing a statutory exception to the privilege mandates disclosure in this case. The court questions the accuracy of the assertion that the term “subject of a crime” is the equivalent of “subject of criminal investigation”, finding it more likely that the term “subject” is being used as essentially a synonym for victim.